**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **BRANDON R. DAVIS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:26-cv-146 (MTT)** |
| **YORK & WHITING, LLC, et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

Plaintiff Brandon Davis brings claims for hostile work environment and retaliation under Title VII against York & Whiting, LLC ("York") and brings claims for hostile work environment and retaliation under 42 U.S.C. § 1981 against both York and York-Brawley II JV LLC ("York-Brawley"). ECF 26. Defendants move to dismiss Davis' complaint. ECF 30. For the reasons that follow, Defendants' motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

Davis is an African American individual who in 2025 was employed as a superintendent in connection with Defendants' federal construction project at Robins Air Force Base. ECF 26 ¶¶ 1-2. On July 18, 2025, Davis saw a subcontractor employee wearing a belt buckle depicting the Confederate flag. *Id.* ¶ 35. Davis first approached the foreman and asked that the subcontractor be directed to remove the belt. *Id.* ¶ 37. The foreman refused, stating that "I'm not telling him to take off that belt. There's nothing wrong with that belt. He's been wearing it for years." *Id.* ¶ 38. Davis then

reported to management that a subcontractor employee was wearing a belt buckle depicting the Confederate flag on the job site. *Id.* ¶ 39. Management responded that the flag was not "banned" but was "not approved," which Davis thought minimized the seriousness and validity of his complaint. *Id.* ¶ 45. Nevertheless, citing restrictions on the public display of flags on military installations, management issued a subcontractor notice addressing the incident. *Id.* ¶ 44. According to Davis, Defendants required him to publicly enforce the policy through a "read-aloud" and signature/acknowledgment process with subcontractor personnel, including the subcontractors involved in the incident. *Id.* ¶¶ 46-49.

After this, Davis alleged that he experienced "backlash risk," loss of authority among subcontractors, additional race-linked hostility, and a hostile and unworkable jobsite environment. *Id.* ¶ 5. On August 7, 2025, a General Superintendent told Davis that "[u]nfortunately, brother, you're Black — that's why you're having a hard time in the workplace." *Id.* ¶ 6. The belt was not removed or concealed until after the July 28, 2025, policy reading. *Id.* ¶ 51. In late July 2025, a non-black K&M Electric employee made a racially mocking statement that he "identif[ies] as Black." *Id.* ¶ 53. Another individual told Davis that, based on his observations of the hostility toward Davis, "a lot of the guys are racist." *Id.* ¶ 54. After Davis complained about the belt buckle and the read-aloud, subcontractor personnel increasingly "bypassed" Davis' authority, disregarded his directives, and challenged his authority in ways that interfered with his core job duties. *Id.* ¶ 56.

On August 15, 2025, Davis resigned and, three days later, informed York that he resigned because of workplace conditions, including discriminatory/hostile conduct, not

personal or family circumstances. *Id.* ¶¶ 70-71. The next day, Davis requested written confirmation of his resignation and reiterated that he quit because of discriminatory and hostile conduct among other workplace concerns. *Id.* ¶ 72. Davis now brings hostile work environment (Count One) and retaliation (Count Two) claims under Title VII against York and under 42 U.S.C. § 1981 against both Defendants (Counts Three and Four).

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*,

297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## III. DISCUSSION[1]

### A. Hostile Work Environment Claims

To plausibly allege a claim for hostile work environment under Title VII and § 1981, Davis must allege sufficient facts showing that: (1) he is a member of a protected group; (2) he was subjected to unwelcome racial harassment; (3) the harassment complained of was based on his race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment; and (5) there is a basis for holding the employer liable.[2] *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014). "[T]o be actionable, the harassment must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009) (internal quotation marks and citation omitted). Courts analyze four factors to determine whether harassment objectively affected an employee's terms and conditions of employment:

---

[1] York initially argued that the Title VII claims should be dismissed because York has fewer than 15 employees. ECF 30-1 at 7-8. However, in Defendants' reply brief, York acknowledged that Davis' allegation regarding the number of York employees "may be sufficient at the pleading stage," citing *Carter v. Oasis Tropical Café, LLC*, 2023 WL 4591917, at *2 (M.D. Fla. July 18, 2023) ("Instead, courts typically address the employee-numerosity requirement on a motion for summary judgment."). ECF 35 at 1-2. The Court agrees.

[2] Hostile work environment claims under Title VII and § 1981 are analyzed under the same framework. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

"(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Adams*, 754 F.3d at 1250-51 (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)).[3]

Davis argues that Defendants are responsible for the hostile work environment because he reported the belt buckle incident to management, Defendants controlled jobsite conditions and the response to the incident, Defendants had authority to require subcontractor compliance or removal, and Defendants' handling was not reasonably calculated to protect Davis from backlash, loss of authority, and continued hostile conditions. ECF 34 at 11. Defendants argue that, even accepting Davis' allegations as true, they are not severe or pervasive enough to state a hostile work environment claim, and Davis has not alleged that the conduct he experienced constitutes an adverse employment action.[4] ECF 30-1 at 6, 8-11.

---

[3] Although these factors are typically used to evaluate hostile work environment claims on a motion for summary judgment, the Eleventh Circuit has held that these same factors are relevant when analyzing a motion to dismiss. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010); *see also Brannon v. Dep't of Veterans Aff.*, 2023 WL 1161129 (11th Cir. Jan. 31, 2023); *Barreth v. Reyes 1, Inc.*, 2020 WL 4370137 (M.D. Ga. July 29, 2020); *Banks v. Cypress Chase Condominium Ass'n. B, Inc.*, 616 F. Supp. 3d 1316 (S.D. Fla. July 21, 2022).

[4] York-Brawley additionally argued that Davis' § 1981 claims should be dismissed because there is no contractual relationship between Davis and York-Brawley. ECF 30-1 at 5-6. However, as noted by Davis, a plaintiff may bring a §1981 claim against a third party when that third party intentionally interferes with the plaintiff's performance or enjoyment of rights under that contract. *See Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171, 1174-75 (11th Cir. 2016). Furthermore, Davis alleges that the Defendants stated that his employment by York was "in support of the York-Brawley Joint Venture," and that their "review of Plaintiff's concerns was based on a joint investigation with YB staff, on-site supervisors/project managers, and senior members of the Y&W and YB teams." ECF 26 ¶ 13. Therefore, the Court cannot conclude at this time that there is not a sufficient contractual relationship between Davis and York-Brawley.

Davis argues that the offensive belt buckle, the refusal of the foreman to tell the employee to remove the belt buckle, the statement that the Confederate flag is "not approved" rather than "banned," requiring Davis to publicly enforce the flag policy through a read-aloud and signature/acknowledgment process, the subsequent undermining of Davis' authority, and two statements from employees that "I identify as Black" and "a lot of the guys are racist," when taken together, support the severe-or-pervasive element at the pleading stage. ECF 34 at 2, 10. However, even if true, these allegations fail on both severity and pervasiveness. Davis has not presented evidence of any severe incidents, nor do these facts demonstrate a pervasive hostile environment. No racist statements were explicitly made toward him, and these allegations occurred over a three-week period. Thus, these allegations are not sufficient. *See Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1336 (2023) (concluding that the evidence was not sufficient to show a hostile work environment where potentially racist comments about President Obama and his family were made, as well as comments about being "confederate flag flyers"); *Barrow v. Georgia Pacific Corp.*, 144 Fed. App'x 54, 57-58 (11th Cir. 2005) (concluding that allegations of some plaintiffs that they saw the letters "KKK" and Confederate flag decals, and suffered isolated, sporadic racial slurs "do not meet the standard of severe and pervasive harassment."); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (concluding that the plaintiff's hostile work environment claim fails even though he "saw his coworkers wear the Confederate flag on a regular basis, and he saw racist graffiti in the men's

restroom that he used daily" in addition to hearing "people say the slur 'n****r" and hearing about "the noose in the breakroom.").[5]

**B. Retaliation Claims**

Davis claims York retaliated against him for Title VII protected activity and that both Defendants, in violation of § 1981, retaliated against him for "engag[ing] in protected activity by opposing race discrimination and reporting the Confederate symbol incident." ECF 26 ¶¶ 81-87, 95, 97.

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee … because he 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006) (quoting 42 U.S.C. § 20000e-3(a)). "[T]he term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals." *Id.* To establish a prima facie case of Title VII retaliation, the employee must prove "that she engaged in statutorily protected conduct; she suffered an adverse employment action; and a causal relation exists between the two events." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023).[6] Protected activity includes an

[5] The Defendants assume that Davis has alleged separately from his hostile work environment claims a claim for constructive discharge. They are wrong. Davis only asserts two hostile work environment claims and two retaliation claims, and it's clear that his alleged constructive discharge was a consequence of the alleged hostile work environment and perhaps a consequence of the alleged retaliation. ECF 26 at 11-14. But, even if Davis had separate constructive discharge claims, those claims would fail as well. "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001). Because Davis has not plausibly alleged hostile work environment claims, he clearly has not plausibly alleged a constructive discharge claim.

[6] While a prima facie case is an "evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), this principle "cannot be read in a vacuum" to allow a complaint facing a 12(b)(6) motion to circumvent *Iqbal's* and *Twombly's* plausible on its face standard. *McCone v.*

employee's opposition to an employment practice made unlawful by Title VII. *E.E.O.C. v. Total System Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citing 42 U.S.C. § 2000e-3). An action is sufficiently adverse when that action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N*, 548 U.S. at 68 (internal quotation marks and citation omitted). To show a causal relation, the Plaintiff must plausibly allege "that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden Cty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).[7]

Davis argues that he engaged in protected activity by opposing race-based harassment. ECF 34 at 12. After this protected activity, Davis claims he was subjected to an adverse employment action: Defendants ordered him to publicly enforce the policy prohibiting the conduct he had opposed. ECF 34 at 13. Davis argues that this would deter a reasonable worker from making or supporting a discrimination complaint. *Id.* at 8. In the context of his retaliation claim, Davis argues this was not an ordinary job assignment. *Id.* at 13. He was the reporting employee, the complaint was race-related, Davis was the only non-white person on the jobsite to his knowledge, and the assignment exposed him to backlash risk, humiliation, and loss of authority. *Id.*; ECF 26 ¶ 49. Davis relies on the same facts to support his § 1981 retaliation claim.

---

*Pitney Bowes, Inc.*, 582 F. App'x 798, 801 (11th Cir. 2014). Thus, the elements of the prima facie case can inform the Court's Rule 12(b)(6) analysis.

[7] The Court considers Davis' Title VII and § 1981 retaliation claims together since "[t]he elements required to establish retaliation claims under § 1981 are the same as those required for Title VII claims." *Worley v. City of Lilburn*, 408 F.App'x 248, 250 (11th Cir. 2011) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

Defendants' motion rests on facts not in Davis' amended complaint. Specifically, Defendants stated that York required all "superintendents (including Davis) to read the relevant Department of Defense policy and receive subcontractor sign-offs acknowledging their compliance." ECF 30-1 at 11. Defendants read too much into the paragraphs they cite from the amended complaint, which state:

> 43. On July 20, 2025, Cambell sent an email acknowledging an "unsettling" experience and referencing the incident.
> 44. On July 22, 2025, Lancaster issued a subcontractor notice referencing DoD restrictions on displays on military installations and stating that display of the Confederate flag was not authorized under the policy. …
> 47. On July 28, 2025, Plaintiff was required to read the DoD policy aloud and collect signatures/acknowledgments from subcontractor personnel, including personnel from K&M Electric, Hamlin Air, and Green Plumbing.

ECF 26 ¶ 43-44, 47. The amended complaint does not make clear whether other superintendents had to read the DoD policy and collect acknowledgments as Davis was required to do. If Davis was the only person required to do this, it is plausible that forcing the person who made the complaint to enforce the policy aimed at the offensive conduct in a public manner could deter a reasonable worker from making such a complaint.

Finally, the Defendants claim that there is no but-for causation between the protected activity and the adverse action. ECF 30-1 at 16-17, 22. Defendants say that Davis was made to enforce the policy because of his supervisory role. *Id.* at 16. However, the policy was read aloud, and acknowledgments were collected shortly after and because of Davis' complaint. ECF 26 at 6-7. Given that, Davis plausibly links the protected activity to the alleged adverse action. Therefore, as a matter of law, the Court cannot conclude that Davis fails to state Title VII and § 1981 retaliation claims.

## IV. CONCLUSION

In sum, Davis fails to state a claim for relief for hostile work environment under both Title VII and § 1981. However, the Court cannot say as a matter of law that Davis' retaliation claims under Title VII and § 1981 fail to state a claim for relief. Therefore, the Defendants' motion to dismiss (ECF 30) is **GRANTED** as to the hostile work environment claims under Title VII and § 1981. The Defendants' motion to dismiss is **DENIED** as to the retaliation claims under Title VII and § 1981. Accordingly, the hostile work environment claims are **DISMISSED without prejudice**.[8]

**SO ORDERED**, this 17th day of November, 2026.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[8] Additionally, Defendants' motion to dismiss filed before Davis' amended complaint (ECF 23), and Defendants' motions to stay discovery (ECF 25, 31) are **DENIED** as moot.